Condemning PRIVATE PROPERTY for public use for MUNICIPAL COURTS FACILITY, and Providing for the Payment of Just Compensation under Ordinance of Kansas City, Missouri, No. 32152, Passed January 14, 1966, Condemnor-Appellant,

v.

Elmer KORDES et al., Condemnees-Respondents.

No. 53044.

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1968.

Herbert C. Hoffman, City Counselor, L. B. Saunders, Ned B. Bahr, Assoc. City Counselors, Kansas City, for appellant, Kansas City.

Reed O. Gentry, Rogers, Field & Gentry, Kansas City, for respondents.

BARRETT, Commissioner.

In a single ordinance Kansas City condemned two tracts of land on Eleventh Street between Locust and Cherry Streets as a site for a Municipal Courts Facility. The two properties were designated as Tract 1 and Tract 2, Tract 1 known as the Lillis property and Tract 2, owned by Elmer H. and Mildred E. Kordes, known as the Kordes property. Tract 1, on the corner of Locust and 11th Streets consisted of Lots 4, 5, 6, 7 and 8 of Smart's second addition, 38,000 square feet. Tract 2 on the corner of 11th and Cherry Streets consisted of Lot 13, and half of Lots 14, 15 and 16, 15,840 square feet. These two parcels of land were separated by an alley. While there were separate tracts and separate owners, the damages resulting from the condemnation were tried in a single proceeding. The jury awarded Tract 1, the Lillis tract, $651,000.00 damages and Tract 2, the Kordes tract, $256,500.00 damages. The city has appealed the Kordes judgment and asserts that the determinative question is: "Are business profits derived from land used as a parking lot and operated by the owner of the land properly capitalized to

determine fair market value, even though such land can be used for other purposes *and* in spite of comparable sales of land in the area?" In its brief the city asserts that the court erred in permitting respondents "to capitalize business profits as evidence of fair market value, over continued objection by appellant," and thereafter in refusing its withdrawal Instruction A. In support of its assignment the city says that because of their speculative and conjectural nature business profits are not proper evidence of fair market value. It is urged that the owners "did not show by their evidence that their land was unavailable for other uses, which might have justified the capitalization of business profits to determine fair market value." And finally it is urged that when the court refused to give Instruction A the jury "erred in the principle upon which they made their appraisal by not giving proper consideration to evidence of comparable sales presented by appellant."

The question the city seeks to pose arose in these circumstances: Both tracts of land, Tract 1 under a lease and Tract 2 by the owners, were and had been used as parking lots for some time. It was agreed by all the witnesses that the highest and best use of both tracts was as parking lots. It is not necessary to dwell on the changing character and development of this area of Kansas City, it is sufficient to note that within a block or two of the condemned land there is now a new large federal office building, a large state office building, the city hall, the courthouse and several other complexes.

Further in the circumstances, the assignments the city set forth in its motion for a new trial and asserts now are not based upon any objections made as the trial progressed. It is not determinative and it is not necessary to illustrate, but the objections directed to the testimony of the respondents' experts were that the answers or hypothetical questions were based upon improper assumptions, there were no objections based squarely upon the proposition now advanced. In addition, as circumstantial background, the city offered two expert witnesses and both of them had first valued Tract 2 solely by "the income capitalization method." Their depositions had been taken fifteen months after they had made their appraisals on the "capitalization method" but on the assumption that the lot's income was $11,000.00 a year, rather than approximately $20,000.00, and it was only a few weeks before the trial that they reappraised the property using the market data approach of comparable sales. It was attempted to explain this change in method but of course the cross-examination was devastating, their only refuge was a repeated "I made a mistake." Also in connection with the city's claim that its evidence was ignored, it may only be said that its witnesses did testify to what they claimed were comparable sales but what weight the jury may have given to the testimony is not of course known. And finally in background, while there is no claim that the offered instruction was an erroneous statement of the law, this is the instruction: "You are instructed that in the determination of the just compensation due any owners or claimants, you shall not take into account any business profits which may be derived from any business operated upon the lands herein by the owners thereof, but you may consider the rental income which has been shown to be derived where the owners or claimants of the land are presently deriving rental income therefrom."

But as indicated, these matters are really all collateral background. The landowners' expert witnesses, after elaborating upon the "completely rejuvenated" area and the fact that Tract 2's highest and best use was a public parking facility, all said that the market data approach of comparable sales could not be used because the only sales were "in the urban renewal development" and were not arm's length transactions. As one witness put it, "I did use the market data approach in that I ex-

**126**

plored it to the point that I ruled it out." Another said, "I searched out many, many comparables, but throughout this area we have got the Land Clearance for Redevelopment situation, and that means that you have got to present your project and have it approved. It isn't an arm's length sale of land." On cross-examination, when asked "When do you ordinarily use the capitalization approach?" the witness replied, "When you don't have any other way to arrive at it, sir, and to try to get to the value of the property in question. * * * Well, in this case I don't know of any other way we could arrive at a fair market on it." There was and is no question now that the owners' evidence of profits were clear, there was reasonable permanence of income and most important the use of the lot, its operation as a public parking lot was related to and connected with the land so that appropriation of the entire tract (compare Shelby County R–IV School Dist. v. Herman, Mo., 392 S.W.2d 609, 614) appropriated the business and thus without quoting and demonstrating in detail the evidence and landowners' cause falls within and is governed by City of St. Louis v. Union Quarry & Construction Co., Mo., 394 S.W.2d 300. And in this view, of course, the court did not err in admitting the evidence and refusing the city's withdrawal instruction and accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

FINCH, P. J., EAGER, J., and JAMES, Special Judge, concur.

DONNELLY, J., not sitting.